UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

ANTONIO RAMON,

                        Petitioner,

            -v-                                                                15-CV-956-JTC

LORETTA E. LYNCH, Attorney General
of the United States;
MICHAEL PHILIPS, Field Office Director for Detention
and Removal, Buffalo Field Office,
Bureau of Immigration and Customs Enforcement;
DEPARTMENT OF HOMELAND SECURITY;
TODD TRYON, Facility Director,
Buffalo Federal Detention Facility.

                        Respondents.

_____

## INTRODUCTION

Petitioner Antonio Ramon, an alien under a final order of removal from the United

States, has filed this *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241

seeking release from detention in the custody of the United States Department of Homeland

Security, Immigration and Customs Enforcement (collectively, "DHS"), pending the execution

of a final immigration order of removal issued against him.   Item 1.   As directed by this

court's order entered November 19, 2015 (Item 5), respondent[1] has submitted an answer

and return (Item 7), along with an accompanying memorandum of law (Item 8), in opposition

to the petition.   Petitioner has filed a reply memorandum of law (Item 9).   For the reasons

_____

[1]The only proper respondent in this proceeding is Todd Tryon, Assistant Field Office Director, Immigration and Customs Enforcement, Buffalo, New York Office, and Director of the Buffalo Federal Detention Facility, as he is "the person who has custody over [the petitioner]."  28 U.S.C. § 2242; *see also* section  2243 ("The writ, or order to show cause shall be directed to the person having custody of the person detained."); *Rumsfeld v. Padilla*, 542 U.S. 426, 434–35 (2004).

that follow, the petition is denied.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Petitioner, a native and citizen of Venezuela, arrived in the United States on or about February 1, 1989 at Miami, Florida, as a B-2 non-immigrant with authorization to remain in the United States for a period not to exceed six months.  Petitioner remained in the United States beyond six months without authorization from an immigration official.  *See* Item 7-1 (Payan Decl.), ¶ 5.

According to DHS records, petitioner has the following criminal history:

-On or about March 5, 1993, petitioner was convicted of intentional murder and criminal possession of a weapon in the second degree and was sentenced to terms of incarceration of 15 years to life and 2 to 6 years, respectively.

-On or about February 26, 1998, 1994, petitioner was convicted of criminal possession of a loaded firearm in the third degree and was sentenced to a term of incarceration of 2 to 5 years.

*See* Payan Decl., ¶ 6; Item 7-2 ("Exh. A"), pp. 5.

On August 13, 1998, while at the Downstate Correctional Facility in Fishkill, New York, petitioner was encountered by DHS officers. His immigration status was determined and he was placed in removal proceedings by a Notice of Appear charging him with being removable from the United States pursuant to § 237(a)(1)(B) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1227(a)(1)(B), as an alien who has remained in the United States for a time longer than permitted.  *See* Payan Decl., ¶ 7; Exh. A, pp. 23-25.

On December 28, 1998, an immigration judge ("IJ") ordered petitioner removed from the United States to Venezuela.  Payan Decl., ¶ 8; Exh. A, pp. 20–22.  Petitioner waived his right to appeal the IJ's decision to the Board of Immigration Appeals ("BIA").  On April 27,

2015, petitioner was received into DHS custody following his release from the New York State Department of Corrections and Community Supervision.  Payan Decl., ¶ 9; Exh. A, pp. 5, 27.

On April 29, 2015, DHS sent a presentation packet to the Consulate General of Venezuela (the "Consulate") in New York, New York, requesting that a travel document be issued for petitioner's removal. Exh. A, p. 27.  On May 6, 2015, DHS served petitioner with a formal Warning for Failure to Depart (Form I-229(a)), along with an instruction sheet listing actions that petitioner was required to complete within 30 days to assist in obtaining a travel document for his removal.  The form advised petitioner, among other things, of penalties under INA § 243, 8 U.S.C. § 1253, for conniving or conspiring to prevent or hamper his departure from the United States, and advised him, pursuant to INA § 241(a)(1)(C), 8 U.S.C. § 1231(a)(1)(C), that a failure to comply, or provide evidence of his inability to comply, may result in the extension of the removal period and subject hum to further detention. Payan Decl., ¶ 11; Exh. A, pp. 17-19.

DHS records indicate that a DHS deportation officer spoke to petitioner on June 29, 2015 and July 1, 2015 regarding verification of petitioner's identity and nationality.  At that time, petitioner made no attempt to assist the officer, refused to provide family contact information, denied possessing any documents from Venezuela, and stated that he did not remember his Venezuelan national identity number. Payan Decl., ¶ 12.  On July 7, 2015, DHS served petitioner with another Form I-229(a), which petitioner refused to sign.  Payan Decl., ¶ 13; Exh. A, p. 16.  As a result, on July 8, 2015, petitioner was served with a Notice of Failure to Comply pursuant to 8 C.F.R. § 241.4(g) which formally advised him of the extension of the removal period in his case.  Payan Decl., ¶ 15; Exh. A, pp. 8-10.

3

In July 2015, DHS conducted a review of petitioner's custody status in accordance with immigration regulations. Payan Decl., ¶ 16; Exh. A, pp. 5-7. On July 30, 2015, DHS advised petitioner that, based upon the totality of information available in his file, DHS determined that petitioner would be a threat to the community and a flight risk if he were to be released from custody. *Id.,* p. 6.

Due to petitioner's continuing failure to cooperate, he was served with additional I-229(a) forms in August, September, October, November, and December 2015 and additional Notices of Failure to Comply in October and December 2015. Payan Decl., ¶¶ 17-18; Exh. A, pp. 2-4, 11-15. As of the time of filing of the Payan Declaration, the petitioner remains in Failure to Comply status. As a result, the removal period has been extended and no further custody review was scheduled. Payan Decl., ¶ 19; 8 C.F.R. 241.4(g)(5)(iii).

DHS records indicate that DHS representatives have attempted or made contact with representatives of the Consulate on numerous occasions in April, May, September, November, and December 2015. Fingerprint verification has been sought through the Venezuelan authorities and the results were still pending as of December 15, 2015. Payan Decl., ¶ 22. Case file notes dated December 30, 2015 indicate that petitioner has recently provided some information to the deportation officer assigned to his case. Consequently, DHS intends to lift Failure to Comply status and a custody review will be conducted according to the applicable regulations. Payan Decl., ¶ 22.

Petitioner filed this petition on November 03, 2015, seeking habeas corpus relief pursuant to 28 U.S.C. § 2241. He argues that his detention is unconstitutional and indefinite as DHS is unable to procure travel documents from the Consulate of Venezuela. Item 1, ¶ 15; Item 9, ¶ 11. The respondent contends that, at this time, the only obstacle to petitioner's

4

immediate removal to Venezuela has been his lack of cooperation in the process.  Payan Decl., ¶ 24.

## DISCUSSION

Petitioner challenges his continued detention by way of habeas corpus review under 28 U.S.C. § 2241, which "authorizes a district court to grant a writ of habeas corpus whenever a petitioner is 'in custody in violation of the Constitution or laws or treaties of the United States.'"  *Wang v. Ashcroft*, 320 F.3d 130, 140 (2d Cir. 2003) (quoting 28 U.S.C. § 2241(c)(3)); *see also Zadvydas v. Davis,* 533 U.S. 678, 687 (2001) (petition under § 2241 is the basic method for statutory and constitutional challenges to detention following order of removal).

Matters pertaining to the detention of aliens pending the completion of immigration removal proceedings and pending removal following the entry of a final order of removal are governed by two separate provisions of the INA–respectively, INA § 236, which authorizes the arrest and detention of an alien on warrant pending a decision on whether the alien is to be removed from the United States, and INA § 241, which authorizes detention of aliens after the issuance of a final removal order.  Section 241(a) requires the Attorney General to accomplish an alien's removal from the United States within a period of 90 days (the "removal period"), commencing on the latest of the following dates:

> (I)  The date the order of removal becomes administratively final.
> (ii)  If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.
> (iii)  If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

8 U.S.C. § 1231(a)(1)(B).

Detention during the ninety-day removal period is mandatory. *See* INA § 241(a)(2) ("During the removal period, the Attorney General *shall* detain the alien."). The statute also authorizes the Attorney General to continue detention of criminal aliens–*i.e.*, aliens ordered removed due to conviction of a crime–beyond the expiration of the ninety-day removal period if it is determined that the alien "is a risk to the community or unlikely to comply with the order of removal ...." INA § 241(a)(6).[2]

In *Zadvydas*, the Supreme Court was presented with the challenge of reconciling this apparent authorization of indefinite detention with the Fifth Amendment's prohibition against depriving a person of liberty without due process. The Court determined that INA § 241(a) authorizes detention after entry of an administratively final order of deportation or removal for a period that is "reasonably necessary" to accomplish the alien's removal from the United States. *Zadvydas*, 533 U.S. at 699-700. Recognizing the practical necessity of setting a "presumptively reasonable" time within which to secure removal, the court adopted a period of six months  "for the sake of uniform administration in the federal courts ...." *Id.* at 701.

---

[2]INA § 241(a)(6) provides in full as follows:

An alien ordered removed who is inadmissible under section 1182 of this title, removable under section 1227(a)(1)(C), 1227(a)(2),or 1227(a)(4) of this title or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3).

8 U.S.C. § 1231(a)(6).

> After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the "reasonably foreseeable future" conversely would have to shrink. This 6-month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.

*Id.*

To comply with the Supreme Court's ruling in *Zadvydas*, the Attorney General has promulgated regulations providing for review of the custody status of aliens who have been detained for more than six months after the issuance of a final order of removal. Under these regulations, a detainee who has been in post-removal-order custody for more than six months may submit a written request for release to DHS Headquarters Post-order Detention Unit ("HQPDU") setting forth "the basis for the alien's belief that there is no significant likelihood that the alien will be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13(d)(1). The written request must include "information sufficient to establish his or her compliance with the obligation to effect his or her removal and to cooperate in the process of obtaining necessary travel documents." 8 C.F.R. § 241.13(d)(2).

In reviewing the request for release, the agency is required to consider "all the facts of the case including, but not limited to," the following:

[T]he history of the alien's efforts to comply with the order of removal, the history of the Service's efforts to remove aliens to the country in question or to third countries, including the ongoing nature of the Service's efforts to remove this alien and the alien's assistance with those efforts, the reasonably foreseeable results of those efforts, and the views of the Department of State regarding the prospects for removal of aliens to the country or countries in question. Where the Service is continuing its efforts to remove the alien, there is no presumptive period of time within which the alien's removal must be accomplished, but the prospects for the timeliness of removal must be reasonable under the circumstances.

8 C.F.R. § 241.13(f).

If the agency finds that the alien has met the burden of demonstrating good reason to believe there is no significant likelihood of removal in the reasonably foreseeable future, and that there are no special circumstances justifying continued detention, then it must order the detainee released. 8 C.F.R. § 241.13(g)(1). However, the agency may impose certain conditions of release on the alien, such as requiring a bond, attendance in a rehabilitative program, or submission to a medical or psychiatric examination. *See* 8 C.F.R. §§ 241.5(b), 241.13(h)(1); *see also Zadvydas*, 533 U.S. at 695 ("[W]e nowhere deny the right of Congress to remove aliens, to subject them to supervision with conditions when released from detention, or to incarcerate them where appropriate for violations of those conditions.").

If the agency finds that the alien has not met his burden, it may issue a denial decision. 8 C.F.R. § 241.13(g)(2). Denial may be based on the alien's lack of cooperation with or obstruction of the removal process. In such a case, and upon written notice to the alien of the efforts he must make to assist in procuring a travel document, the agency "shall not be obligated to conduct a further consideration of the alien's request for release until the alien has responded to the HQPDU and has established his or her compliance with the statutory requirements." 8 C.F.R. § 241.13(e)(2). Pursuant to INA § 241(a), the ninety-day

removal period is extended and the alien may remain in detention "if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal." 8 U.S.C. § 1231(a)(1)(C); 8 C.F.R. § 241.4(g).

In this case, the ninety-day statutory removal period commenced on April 27, 2015, when petitioner was released from the custody of the New York State Department of Corrections and Community Supervision. Thereafter, DHS promptly undertook efforts to secure a travel document for petitioner's removal to Venezuela, but petitioner failed to provide identifying information. He was served with multiple Warnings for Failure to Depart and was advised that his lack of cooperation could result in the extension of the removal period. On July 10, 2015, petitioner was served with a Notice of Failure to Comply which advised him of the consequences of his lack of cooperation. Exh. A, pp. 8-10. A second Notice of Failure to Comply was served on October 2, 2015. Exh. A, pp. 2-4. The record indicates that petitioner has only recently begun to cooperate with DHS officials by providing the names of family and friends in Venezuela and former addresses. As set forth in the Payan Declaration, as of December 30, 2015, DHS intends to remove petitioner from Failure to Comply status and review his detention in accordance with the applicable regulations. Payan Decl., ¶ 22. Upon review of the factual record in this case, the court finds that, due to petitioner's lack of cooperation, the removal period was properly suspended pursuant to INA § 241(a)(1)(C) and that petitioner's detention more than 90 days after his order of removal became final does not entitle him to habeas corpus relief. *See Powell v. Ashcroft,* 194 F.Supp.2d. 290, 211 (E.D.N.Y. 2002).

Furthermore, considering petitioner's habeas challenge under the due process

standards set forth in *Zadvydas*, petitioner must first "provide[ ] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701.  Only if he makes this initial showing does the burden shift back to the government, which "must respond with evidence sufficient to rebut that showing." *Id.*; *see also Wang v. Ashcroft*, 320 F.3d at 146 ("reasonable foreseeability" test of *Zadvydas* "articulates the outer bounds of the Government's ability to detain aliens (other than those serving criminal sentences) without jeopardizing their due process rights").

Upon review of the submissions on the present petition, the court finds that petitioner has failed to sustain his initial burden under *Zadvydas*.  The petition sets forth no factual basis to substantiate petitioner's belief that there is no significant likelihood he can be removed to Venezuela in the reasonably foreseeable future. While petitioner has argued that no travel document has been secured, *see* Item 1, ¶ 15, efforts to confirm petitioner's identity are continuing, a fingerprint identification is outstanding, and the request for a travel document remains pending with the Consulate. Additionally, the risk of indefinite detention that motivated the decision in *Zadvydas* does not exist when an alien is the cause of his own detention.  "[A]n alien cannot assert a viable constitutional claim when his indefinite detention is due to his failure to cooperate with te INS's efforts to remove him." *Pelich v. INS,* 329 F.3d 1057, 1061 (9th Cir. 2003); *Powell v. Ashcroft,* 194 F.Supp.2d at 210.  Moreover, there are no institutional obstacles to petitioner's removal.  In recent years, DHS has repatriated numerous aliens to Venezuela.  In fiscal year 2010, 391 aliens were repatriated to Venezuela; in 2011, 308 aliens were repatriated to Venezuela; and in 2012 , 254 aliens were repatriated to Venezuela.  *See* DHS Yearbook of Immigration Statistics: 2012, Table 41: http://www.dhs.gov/yearbook-immigration-statistics-2012-3.   In the meantime, petitioner's

continued detention is not in violation of his due process rights as long as his removal is reasonably foreseeable.

Based on this authority, and upon full consideration of the record presented by way of the parties' submissions, the court finds that petitioner has failed to meet his initial burden under *Zadvydas* to "provide[ ] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," *Zadvydas*, 533 U.S. at 701, and that petitioner may not rely on any delay resulting from his own lack of cooperation in the removal process to claim that his prolonged detention violates substantive due process. Accordingly, petitioner has failed to demonstrate that he is "in custody in violation of the Constitution or laws or treaties of the United States" for the purposes of granting habeas corpus relief under 28 U.S.C. § 2241, and his petition must be denied.

## CONCLUSION

For the foregoing reasons, the petition is denied, and the case is dismissed. This dismissal is without prejudice to file another petition should it subsequently appear that removal is no longer reasonably foreseeable. *See Andreenko v. Holder*, 2012 WL 4210286, at *5 (W.D.N.Y. Sept. 18, 2012); *Kassama v. Dep't of Homeland Sec.,* 553 F. Supp. 2d 301, 307 (W.D.N.Y. 20008).

It is further ordered that certification pursuant to 28 U.S.C. § 1915(a)(3) be entered stating that any appeal from this Judgment would not be taken in good faith and therefore leave to appeal as a poor person should be denied. *Coppedge v. United States*, 369 U.S. 438 (1962).

The Clerk of the Court is directed to enter judgment in favor of respondent, and to close the case.

So ordered.

_____\s\ John T. Curtin_____
JOHN T. CURTIN
United States District Judge

Dated:   January 27, 2016